UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                                              :
UNITED STATES OF AMERICA,            :    CASE NO. 1:07-CR-68
                                                              :
               Plaintiff,                              :
                                                              :
vs.                                                       :    OPINION & ORDER
                                                              :    [Resolving Docs. No. 33, 37]
GERALD TAYLOR and MAURION   :
LEWIS,                                                  :
                                                              :
               Defendants.                         :
                                                              :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

With this Opinion and Order, the Court decides whether to grant the motions of Defendants Gerald Taylor ("Taylor") and MAURION Lewis ("Lewis") to suppress evidence seized and statements obtained by the police during and after a January 11, 2007 investigatory stop of their vehicle and warrant search of a motel room occupied by Taylor and Lewis. Taylor's and Lewis's co-defendants in this action include Carl Henderson ("Henderson"), and Tekora Madden ("Madden"), each of whom have filed motions to suppress that the Court separately considers.

For the reasons presented below, the Court **DENIES** the defendants' suppression motions.

I. Background

On January 11, 2007, United States Special Agent Lee Lucas ("Lucas") directed an on-going undercover investigation of a suspected PCP distribution ring involving individuals in Los Angeles and Cleveland. Trial Tr. at 9 (Mar. 16, 2007). The PCP conspirators allegedly included Madden, Henderson, Lewis, and Taylor. *Id.* With respect to the January 11, 2007 events involving

-1-

Case No. 1:07-CR-68
Gwin, J.

Defendants Taylor and Lewis, Lucas participated in surveillance and interrogation efforts as part of an undercover investigation team that included, among others, Special Agent Shaun Moses ("Moses"), Special Agent Thomas Verhiley ("Verhiley"), Officer Terry Hill ("Hill"), and Officer Randy Wilson ("Wilson"). [Doc. 1-2.]

On January 11, 2007, a confidential informant told the undercover team that Henderson, Taylor, and Lewis were at the Extended Stay America motel in Brooklyn, Ohio, likely in Room 104 or 106. *Id.* Consequently, Special Agent Moses and Officers Hill and Wilson initiated surveillance at the motel. The undercover officers rented Room 103, across the hall from Rooms 104 and 106 and they also set up surveillance of the motel's parking lot. *Id.*

While in Room 103, Officer Wilson observed Lewis exit Room 106 at approximately 1:30 p.m. and head toward the side entrance of the motel. *Id.* Wilson also heard another motel room door close in the vicinity of Room 106. *Id.* Minutes later, the undercover officers observed Taylor and Lewis enter a silver van parked in the vicinity of Room 106. *Id.* Within this time frame, Hill also saw Henderson walk from the side entrance of the motel and enter the passenger side of a green minivan driven by Madden. *Id.*

The Taylor-Lewis undercover team followed the silver van as it exited the motel's parking lot and entered onto Interstate 480. *Id.* Once on the interstate, Taylor engaged in counter-surveillance driving techniques, including dramatic speed and lane changes. *Id.* During the undercover officers' roving surveillance, Officer Wilson ran the ownership information for the van and found that it belonged to Henderson. *Id.*

Eventually, Taylor exited Interstate 480 at Twinsburg and pulled into the parking lot of a Wendy's restaurant. *Id.* Taylor backed the van into a parking space far from the restaurant's

Case No. 1:07-CR-68
Gwin, J.

entrance. *Id.* Special Agent Lucas entered the Wendy's parking lot, got out of his car, and went into the restaurant where he observed Taylor and Lewis sitting in the silver van and smoking what he believed to be marijuana. *Id.* After approximately thirty minutes, Taylor pulled through the Wendy's drive-through and then traveled back onto Interstate 480 in the direction of Cleveland. *Id.* Special Agents Lucas and Verhiley followed the silver van onto the interstate, where Taylor again engaged in counter-surveillance driving maneuvers. *Id.*

Eventually, Taylor exited the highway and pulled into the parking area of a Marathon gas station in Maple Heights, Ohio. *Id.* The officers intercepted the van in the parking lot, removing both Taylor and Lewis from the vehicle and searched the van. *Id.* The officers based the investigatory stop on Taylor's many traffic violations, the fact that Taylor and Lewis appeared to have been smoking marijuana while driving and at the Wendy's restaurant, and Taylor's and Lewis's suspected connection to Henderson's drug trafficking activities. *Id.*

During the search of the van, Special Agent Lucas found a small amount of marijuana in the van's front console. *Id.* The officers also found an electronic room key in Lewis's pocket, which they confiscated and later learned corresponded to Room 106 of the Extended Stay America motel in Brooklyn, Ohio. *Id.* Special Agent Lucas advised Taylor and Lewis of their *Miranda* rights. *Id.* Officers then questioned the men and learned that they were from California, staying at the Extended Stay America motel, and knew Henderson. *Id.* Thereafter, Special Agent Moses applied to the Cuyahoga County Court of Common Pleas for a search warrant for Room 106. *Id.*

In his affidavit accompanying the request for a search warrant, Special Agent Moses set forth historical information received from five confidential informants. *Id.* The informants provided information as to drug trafficking activities undertaken by Henderson starting in 2003 through

-3-

Case No. 1:07-CR-68
Gwin, J.

January 11, 2007. *Id.* The informants told the police that Henderson had entered either Room 104 or 106 at the Extended Stay American motel at a time when Lewis occupied Room 106. *Id.* In the affidavit, Special Agent Moses described the arrests of Henderson, Madden, Lewis, and Taylor, as well as the police search of Madden's residence where officers found several ounces of suspected PCP, two pounds of suspected marijuana, and a large amount of currency. *Id.* The Cuyahoga County Court issued a search warrant for Room 106 of the Extended Stay America motel in Brooklyn, Ohio. *See, e.g.*, Trial Tr. at 281-82 (Mar. 16, 2007). Upon searching the room, the police found PCP and other contraband. [Doc. 75.]

On February 7, 2007, the Government indicted Taylor and Lewis with one count each of conspiracy to distribute and possess PCP, possession with the intent to distribute PCP, and related forfeiture charges. [Doc. 15-3.] Taylor and Lewis pleaded "Not Guilty." [Docs. 27, 28]

Lewis filed initial and amended motions to suppress evidence seized and statements obtained during the January 11, 2007 traffic stop and police search of Room 106. [Docs. 21, 37.] Lewis supplemented his amended motion March 26, 2007. [Doc. 97.] Taylor also filed a motion to suppress and a supplemental pleading. [Docs. 33, 104.] The Government opposed the defendants' motions. [Doc. 75.]

On March 16 and 19, 2007, the Court conducted a hearing, during which it received evidence and heard argument related to the suppression requests of Defendants Madden, Henderson, and Taylor. [Docs. 81, 86.] On March 28, 2007, the Court conducted a suppression hearing on Defendant Lewis's motion. [Doc. 100.]

This Opinion and Order follows from the arguments presented by the parties in their pleadings and the evidence given at their suppression hearings.

Case No. 1:07-CR-68
Gwin, J.

## II. Legal Standard

The Fourth Amendment prohibits "unreasonable searches and seizures" by the government. U.S. CONST. amend. IV. These protections extend to investigatory stops of vehicles, arrests, and police searches of premises. *Terry v. Ohio*, 392 U.S. 1, 9 (1968); *United States v. Cortez*, 449 U.S. 411, 417 (1981); *United States v. Arvizu*, 534 U.S. 266, 273 (2002). Because the "balance between the public interest and the individual's right to personal security," *United States v. Brignoni-Ponce*, 422, U.S. 873, 878 (1975), tilts in favor of a standard of less than probable cause in such cases, an officer satisfies the Fourth Amendment's requirements if he supports his action by reasonable suspicion to believe that criminal activity "may be afoot," *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry*, 392 U.S. at 30). *See also Cortez*, 449 U.S. at 417 (noting that "[a]n investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity"). *And see Arvizu*, 534 U.S. at 277 (allowing as an objective basis for reasonable suspicion an officer's "observations, registration check, and his experience as a border patrol agent" to stop a suspected smuggler).

A court makes a "reasonable suspicion" determination by looking at the "totality of the circumstances" of each case to see whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing. *See, e.g.*, *Cortez*, 449 U.S. at 417-18; *Arvizu*, 534 U.S. at 273. In doing so, a court allows officers to draw from their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that "might well elude an untrained person." *Cortez*, 449 U.S. at 418. Although an officer's mere "hunch" insufficiently justifies a stop, *Terry*, 392 U.S. at 27, "the likelihood of criminal activity need not rise to the level of probable cause, and it falls considerably short of satisfying a preponderance

Case No. 1:07-CR-68
Gwin, J.

of the evidence standard," *Arvizu*, 534 U.S. at 274 (citing *Sokolow*, 490 U.S. at 7).

Although a law enforcement officer can conduct a *Terry* stop based upon "reasonable suspicion," the Fourth Amendment requires that the undercover officers support an arrest with probable cause. *See, e.g.*, *Dunaway v. N.Y.*, 442 U.S. 200, 212-14 (1979). "Probable cause" consists of knowledge, facts, and circumstances that "are sufficient to warrant a prudent person, or one of reasonable caution, [to believe] in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Mich. v. DiFillippo*, 443 U.S. 31, 37 (1979).

Probable cause for a search warrant exists if "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Ill. v. Gates*, 462 U.S. 213, 238 (1983). The reviewing judicial magistrate "is simply to make a practical, common-sense decision" whether all the facts and circumstances set forth in the supporting affidavit warrant "a reasonably prudent person" to believe that a crime has occurred and the place to be searched contained evidence thereof. *Id.* at 238. The magistrate reads the affidavit "not hypertechnically, but in a common sense fashion." *United States v. Ware*, 338 F.3d 476, 482 (6th Cir. 2003). Where a magistrate judge has a "substantial basis" for concluding that a search would uncover evidence of wrongdoing, his decision will stand unless a reviewing court finds that he "arbitrarily exercised" his powers of determination. *Gates*, 462 U.S. at 238-39; *United States v. Leon*, 468 U.S. 897, 920 (1984); *United States v. Leake*, 998 F.2d 1359, 1363 (6th Cir. 1993). The Fourth Amendment's exclusionary rule allows the "admission of evidence seized in reasonable, good faith reliance on a search warrant that is subsequently held to be defective." *United States v. Leon*, 468 U.S. 897 (1984). *See also United States v. Carpenter*, 360 F.3d 591, 596-97 (6th Cir. 2004) (finding that the good faith exception applied because sufficient nexus existed between residence and illegal activity for police to

Case No. 1:07-CR-68
Gwin, J.

reasonably believe a warrant valid); *United States v. Van Shutters*, 163 F.3d 331, 336 (6th Cir. 1998) (finding that a search pursuant to a warrant is upheld where the affidavit described the residence, the items sought, and the defendant's counterfeiting scheme, but connected the place to the illegal activity only by stating that the residence "was available" to the defendant).

### III.  Analysis

In their pending motions, Defendants Taylor and Lewis ask the Court to suppress evidence seized during the January 11, 2007 stop of their vehicle and warrant search of their motel room. Taylor and Lewis say that the police stopped and searched their van without reasonable suspicion, probable cause, or a search warrant.  Taylor and Lewis also say that the police relied on an invalid warrant to search Room 106 at the Extended Stay America motel.  For these reasons, Defendants say that the police violated their Fourth Amendment rights and, as a result, ask the Court to suppress all of the evidence and statements obtained by the police on January 11, 2007.

In response, the Government says that the police stopped Taylor and Lewis based on reasonable suspicion and then arrested Taylor and Lewis based upon probable cause gained through the undercover officers' surveillance of their activities on January 11, 2007.  Specifically, the Government says that the officers stopped the silver van because they observed Taylor commit many traffic violations and the defendants smoke marijuana while driving and at the Wendy's restaurant. The Government also says that the officers reasonably relied on confidential informants and their own observations to suspect that Taylor and Lewis had engaged, or sought to engage, in a present or pending drug transaction involving Henderson and Room 106.  Accordingly, the Government claims the police obtained and executed a valid search warrant for Room 106.  Because the officers acted on reasonable suspicion, with probable cause, and under the aegis of a valid search warrant,

Case No. 1:07-CR-68
Gwin, J.

the Government asks that the Court deny Defendants' motions to suppress.

### A. The Investigatory Stop and Arrests of Taylor and Lewis

Considering the totality of the circumstances and giving due weight to the factual inferences drawn by the law officers who testified at the suppression hearing, the Court finds that the officers had reasonable suspicion to conduct an investigatory stop of the silver van and had later probable cause to arrest Taylor and Lewis.

During their roving surveillance of the silver van, Special Agents Lucas and Verhiley observed Taylor violate numerous traffic laws, including speeding and abrupt turns across lanes of traffic. "[S]o long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resulting stop is not unlawful." *United States v. Freeman*, 209 F.3d 464, 466 (6th Cir. 2000) (quoting *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993)).

Lucas and Verhiley conducted roving surveillance of the Taylor-Lewis van from the Extended Stay America motel in Brooklyn to the Wendy's restaurant in Twinsburg and then back east toward Cleveland. During this roving surveillance, the officers testified that Taylor drove at high rates of speed and in an erratic manner. The officers traveled closely behind the Taylor-Lewis van during their roving surveillance. So long as Lucas and Verhiley believed that Taylor violated traffic laws, the officers' resulting stop of the Taylor-Lewis van is not unlawful. *Freeman*, 209 F. 3d at 466. Consequently, the Court finds that the officers had a particularized and objective basis for suspecting Taylor's legal wronging, i.e., that he violated traffic laws, and, therefore, had reasonable suspicion to stop the van.

The testimony of Special Agents Lucas and Verhiley that Taylor and Lewis smoked marijuana while traveling in the silver van gives additional support for this finding. Section 4511.19

Case No. 1:07-CR-68
Gwin, J.

of Ohio's Revised Code provides that "[n]o person shall operate any vehicle, . . . if, at the time of the operation, [t]he person is under the influence of . . . a drug of abuse . . .". OHIO REV. CODE ANN. § 4511.19. When the officers removed Taylor and Lewis from the silver van, they detected the odor of marijuana. Special Agent Lucas then found marijuana in the van. During the investigatory stop, Taylor admitted that he smoked marijuana while driving the van. Thus, this violation of Ohio's drug laws provided the officers with a second grounds for reasonable suspicion to stop the silver van.

Finally, based on information from confidential informants and earlier police surveillance at the Extended Stay America motel, the officers reasonably suspected that Taylor and Lewis had engaged – or sought to engage – in criminal activity. For example, Special Agent Lucas reasonably inferred from information gained from other officers, his observations, and his training and experience, that Taylor and Lewis drove from the Extended Stay America motel in a van registered to Henderson to engage in a drug deal. Special Agent Verhiley corroborated Lucas's testimony. Other officers saw Henderson, a known Los Angeles gang member and drug dealer, and Madden, his wife, at the Extended Stay America motel shortly before Taylor and Lewis started driving Henderson's silver van. Considering the totality of the circumstances, the officers had reasonable suspicion to stop the silver van.

Taylor and Lewis argue that the Court must rule in their favor because they "committed no traffic violation upon which to premise the police's stop of the silver van." *See* Doc. 33-2. Taylor says that the officers stopped the silver van based solely upon "the prior information regarding the Carl HENDERSON drug trafficking organization and the events that took place earlier in the day." *Id.* In his post-hearing briefing, Taylor repeats these contentions. [Doc. 104.] Lewis claims that the January 11, 2007 police stop violated his Fourth Amendment rights because it "was not based upon

-9-

Case No. 1:07-CR-68
Gwin, J.

'reasonable suspicion' that [Taylor or Lewis] had violated any law or ordinance." *See* Docs. 21, 37.

These arguments fail. During the two-day suppression hearing, Special Agents Lucas and Verhiley credibly testified that they observed Taylor and Lewis smoking marijuana in the silver van, speeding, and driving in an erratic manner. Lucas and Verhiley also credibly said that, based on information from confidential informants and other undercover officers, they believed that Taylor and Lewis met with Henderson prior to their excursion in the silver van. Henderson's ownership of the van supported the officers' beliefs that Henderson, Taylor, and Lewis had engaged, or planned to engage, in a drug deal on January 11, 2007. The Court credits the officers' testimony.

Therefore, taken together, these circumstances provided a "*particularized suspicion relative to the van and/or its occupants*," *see* Doc. 33-2, for the officers to stop the silver van and, thus, makes the stop "reasonable" within the context of the Fourth Amendment. Further, the officers had probable cause to arrest Taylor and Lewis for violating state drug and traffic laws and for their suspected roles in Henderson-related drug-trafficking activity.

Having found that the officers properly stopped the silver van and arrested Taylor and Lewis, the Court also finds that the police properly confiscated the marijuana from the vehicle incident to the Defendants' lawful arrests. *See, e.g.*, *United States v. Robinson*, 414 U.S. 218, 224 (1973) (noting that "a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment"). During a lawful arrest, the police may permissibly search not only the person of the arrested, but also "the area within the control of the arrestee." *Id.* That the police did not know whether the confiscated contraband belonged to Taylor or Lewis does not taint the seizure as it relates to either Defendants' arrest, because the officers found the contraband in an "area within the control of" both men. The marijuana has evidentiary value to the Government's charges against

-10-

Case No. 1:07-CR-68
Gwin, J.

both Taylor and Lewis. Thus, the Court will not suppress the evidence seized by the officers from the silver van.

### B. Validity of the Search Warrant for Room 106

Turning to the question of the validity of the January 11, 2007 search warrant for Room 106 at the Extended Stay America motel, the Court finds that the Cuyahoga County Court of Common Pleas search warrant appropriately considered Special Agent Moses's affidavit and, thereupon, properly issued the search warrant. Even if the Court did not make this finding, the Court finds the police officers, in executing the judge-approved warrant, acted in good faith reliance on a facially valid warrant. *See, e.g*, *Leon*, 468 U.S. at 920.

Both Taylor and Lewis say that Moses's affidavit insufficiently supports a finding of probable cause. The Court disagrees. On its face and read in a common sense fashion, Moses's affidavit recites facts and circumstances indicating a fair probability that the police would discover evidence of a drug trafficking in Room 106. *See Gates*, 462 U.S. at 238.

First, the affidavit demonstrates that Taylor and Lewis, Californians with criminal records involving drug and weapons, associate with Henderson, a known drug trafficker from California, and Madden, his wife suspected of assisting Henderson's drug dealing. Each of Henderson, Taylor, and Lewis traveled in early January from Los Angeles, a drug source city, to Cleveland, a drug destination city. Lewis stated that he came to Cleveland with Taylor to see Madden and that she provided Henderson's van to the men. Taylor and Henderson, from California and with criminal drug records, interact with Henderson and Madden, a suspected husband and wife team of drug dealers. Thus, the facts and circumstances of the Californians' travel and interaction with each other and Madden indicate a common sense conclusion that Taylor and Lewis came from Los Angeles to

-11-

Case No. 1:07-CR-68
Gwin, J.

Cleveland to engage in criminal activity. The next logical question becomes: "where?"

Moses's affidavit indicates a nexus between drugs, large sums of money, Henderson, Madden, Taylor, Lewis, and Room 106 at the Extended Stay America motel. The affidavit states that, on January 11, 2007, Henderson, Madden, Taylor, and Lewis were at the Extended Stay America motel. Lewis rented Room 106 at the motel. Taylor stayed with Lewis in Room 106. Henderson was at the motel. At approximately 1:30 p.m., Taylor and Lewis departed the Room 106 in a silver van owned by Henderson and provided to them by Madden. At approximately that same time, Madden and Henderson left the motel in a green minivan. Within the next hour, undercover officers stopped the Taylor-Lewis van and confiscated marijuana from the vehicle. Separately, another undercover team stopped the Madden-Henderson minivan and confiscated approximately $17,000 that smelled of marijuana. Thus, given the contemporaneous nexus of the foursome at the Extended Stay America motel, Taylor and Lewis's immediate use of Room 106, and the discovery of marijuana and a large amount of marijuana-smelling money in the two vans shortly thereafter, a substantial basis existed to believe that Room 106 at the Extended Stay America motel was the location where any illicit activity involving Madden, Henderson, Taylor, and Lewis had happened.

Finally, when questioned by police, both Taylor and Lewis attempted to conceal the fact that they were staying in Room 106 of the Extended Stay America motel. At the scene of the Taylor-Lewis investigatory stop, Taylor told the arresting agent that he was staying at a hotel on "Presidente," but could not provide any further information; Lewis named the "Hilton Hotel, located in downtown Cleveland" as his lodging. Although the Cleveland Hilton stands directly opposite Jacobs Field, the park where the likely winner of the 2007 Major League Baseball World Series plays, Lewis could not identify any landmarks near the hotel. Upon questioning by Special Agent

-12-

Case No. 1:07-CR-68
Gwin, J.

Lucas, both Taylor and Lewis finally admitted that they were staying at the Extended Stay America motel in Brooklyn. The police retrieved a hotel key from Lewis's person that they ultimately found to be the key to Room 106 of the motel. Thus, Taylor's and Lewis's conflicting stories and surreptitious answers warrant a reasonable person to possess the belief that Room 106 contained evidence of criminal activity.

Taken together, these facts establish a "fair probability" that the California trio of Henderson, Taylor, and Lewis conducted or intended to conduct drug-related activity out of Room 106 at the Extended Stay America motel.

Taylor and Lewis say that Moses's affidavit fails to establish probable cause for the issuance of a search warrant for Room 106 because it does not establish the reliability of the cited confidential informants or otherwise independently corroborate their information. Again, the Court disagrees. First, the confidential informants corroborate each other by providing similar information. Second, the informants confirm that they know Henderson and his associates as drug dealers who travel between California and Cleveland. Third, Moses's affidavit demonstrates that the confidential informants know Henderson and Madden deal in drugs. The consistency of each informant's statement with that of the others' indicates the overall reliability of the individual sources.

Thus, the Court finds that the Cuyahoga County Court of Common Pleas had a substantial basis to conclude that a search of Room 106 would uncover evidence of a drug-trafficking operation related to Henderson, a known California gang member and drug dealer. *Gates*, 462 U.S. at 238-39. No evidence indicates that the Cuyahoga County Court arbitrarily exercised its determination. *Leake*, 338 F.3d at 482. Instead, based on a common sense reading of Moses's affidavit, the court could conclude that a fair probability existed that the undercover officers would find evidence of

-13-

Case No. 1:07-CR-68
Gwin, J.

drug dealing activity in Room 106. *Gates*, 462 U.S. at 238. Thus, the Court finds that the Cuyahoga County Court properly issued the January 11, 2007 search warrant for Room 106 of the Extended Stay America motel in Brooklyn, Ohio, which the undercover officers then validly executed.

### IV. Conclusion

For the foregoing reasons, the Court **DENIES** the suppression motions of Defendants Taylor and Lewis.

IT IS SO ORDERED.


Dated: April 13, 2007                     s/      *James S. Gwin*
                                          JAMES S. GWIN
                                          UNITED STATES DISTRICT JUDGE