UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
---------------------------------------------------------

                                     :

UNITED STATES OF AMERICA,       :

                                       :        CASE NO. 1:07-CR-68

          Plaintiff,           :

                                       :

          v.                      :        OPINION & ORDER

                                       :        [Resolving Doc. 222; Doc. 223.]

CARL HENDERSON, *et al.*,       :

                                       :

          Defendants.       :

                                       :

---------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Following their convictions for PCP-related offenses, the defendants in this case move for new trials under Federal Rule of Criminal Procedure 33 on the ground that the government failed to disclose evidence they could have used to impeach a government witness—in violation of *Giglio v. United States*, 405 U.S. 150 (1972). [Doc. 222; Doc. 223.]  As explained below, although the government's conduct is troubling, because untainted evidence corroborated the witness's testimony, the government's failure to disclose that alleged impeachment evidence did not prejudice the defendants.  Accordingly, the Court **DENIES** their new trial motions.

From 2005-2007, Drug Enforcement Administration Special Agent Lee Lucas led an investigation of a PCP ring operating between California and Ohio.[1]  [Suppression Hr'g Tr. (Mar.

_____

[1]The Court's previous opinions more fully detail the case's factual background.  [Docs. 111,
(continued...)

Case No. 1:07-CR-68
Gwin, J.

16, 2007).]  In the course of that investigation, on January 11, 2007, Agent Lucas joined the

surveillance of Defendant Carl Henderson—tied to the PCP ring by several confidential

informants—at an Extended Stay America hotel in Brooklyn, Ohio that Henderson visited although

he lived nearby.  [Suppression Hr'g Tr. (Mar. 16, 2007).]

Officers conducting the stakeout observed two vans registered to Henderson leaving the

hotel.  [Suppression Hr'g Tr. (Mar. 16, 2007).]  Henderson and his wife, Tekora Madden, drove

away in one van (according to Agent Lucas, Rocky River Police Officer Tracy Hill, and DEA Special

Agent Shawn Moses), followed by Agent Lucas, Task Force Officer Thomas Verhiley, and other

Cleveland Police Department officers.  [Suppression Hr'g Tr. (Mar. 16, 2007).]  Shortly thereafter,

officers stopped the van, arrested Henderson on an outstanding Cuyahoga County warrant, and

searched the van.  [Suppression Hr'g Tr. (Mar. 16, 2007).]  The search turned up about $17,000 in

cash but no contraband.  [Suppression Hr'g Tr. (Mar. 16, 2007).]  Agent Lucas then *Mirandized*

Henderson, and—according to Agent Lucas, Detective Jamal Ansari, and Detective Tim

Clark—Henderson admitted that he had met with Taylor and Lewis at the Extended Stay, that he lent

his van to Taylor and Lewis, and that the three belonged to the Nutty Bloc Crips, a Los Angeles drug

gang.  [Suppression Hr'g Tr. (Mar. 16, 2007).]

Agent Lucas and Task Force Officer Verhiley then joined the tail of the other van, which

drove to a Wendy's restaurant in Twinsburg, Ohio.  [Suppression Hr'g Tr. (Mar. 16, 2007).]  While

the van waited in the Wendy's parking lot, Task Force Officer Verhiley observed the van's two

occupants, Defendants Gerald Taylor and Maurion Lewis, smoking what appeared to be marijuana.

---

[1]/(...continued)
112, 113, 133, 139.]

Case No. 1:07-CR-68
Gwin, J.

[Suppression Hr'g Tr. (Mar. 16, 2007).]  After ten minutes, the van left Wendy's and proceeded west

on I-480, with Agent Lucas, Task Force Officer Verhiley, and other officers in stealth pursuit.

[Suppression Hr'g Tr. (Mar. 16, 2007).]  Agent Lucas claimed that he spotted Taylor and Lewis

smoking marijuana while driving and that the van was speeding.  [Suppression Hr'g Tr. (Mar. 16,

2007).]  When the van exited the highway and stopped at a gas station, Lucas—on the basis of

Taylor and Lewis's marijuana use, traffic violations, and ties to Henderson—ordered his team to

arrest Taylor and Lewis and search the van.  [Suppression Hr'g Tr. (Mar. 16, 2007).]  The search

yielded a small amount of marijuana and a key for Room 106 at the Extended Stay, which Lewis and

Taylor (after being *Mirandized*) admitted to sharing.  [Suppression Hr'g Tr. (Mar. 16, 2007).]  Agent

Moses then obtained a valid search warrant for Room 106, executed the warrant, and discovered

seven kilograms of PCP.  [Suppression Hr'g Tr. (Mar. 16, 2007).]

After the government brought criminal charges against the defendants, Taylor and Lewis

moved to suppress the evidence against them.  [Doc. 33; Doc. 37.]  The Court denied their

suppression motion, reasoning that (1) the officers had reasonable suspicion to stop the van and

probable cause to arrest Taylor and Lewis based on their traffic violations and marijuana use—as

independently perceived by Agent Lucas and Task Force Officer Verhiley—as well as confidential

informants' tips about their involvement in an impending drug deal, and (2) the officers' search of

their Extended Stay hotel room was valid because Agent Moses's affidavit in support of the warrant

application established Taylor's and Lewis's numerous ties to Henderson (a suspected drug dealer),

illegal drugs, and Room 106.  [Doc. 112.]

At the subsequent criminal trials of Henderson, Taylor, and Lewis, the government

introduced this account of events through, *inter alia*, the testimony of Agent Lucas, Task Force

Case No. 1:07-CR-68
Gwin, J.

Officer Verhiley, Officer Hill, Agent Moses, and Task Force Officer Randy Wilson. [Doc. 152; Doc. 160.]  Juries convicted Taylor and Lewis for PCP-related offenses and Henderson for both PCP-related offenses and felony possession of ammunition.  [Doc. 155 (Taylor); Doc. 156 (Lewis); Doc. 158 (Henderson).]

After their convictions, the defendants claim to have learned that the government possessed evidence that they could have used to impeach Agent Lucas. [Doc. 222; Doc. 405.]  That evidence included (1) the Eleventh Circuit's observation that Agent Lucas intentionally misrepresented facts in a search warrant affidavit, *see United States v. Novaton*, 271 F.3d 968, 987 (11th Cir. 2001), (2) Agent Lucas's allegedly perjured testimony before a grand jury in *United States v. Von Schlieffen*, No. 93-187-CR, 2009 WL 577720, at *1-*3 (S.D. Fla. Mar. 5, 2009), (3) Agent Lucas's alleged physical abuse and unconstitutional searches of suspects in *United States v. Mesa*, No. 1:02-mj-3091 (N.D. Ohio 2002), and (4) the U.S. Attorney's Office's 2002 investigation of Cleveland Police Department practices, which revealed that Agent Lucas was sloppy and not credible.  [Doc. 405.] Because this evidence tends to undermine Agent Lucas's credibility, the defendants argue that the government's failure to disclose it violated *Giglio v. United States*, 405 U.S. 150 (1972). [Doc. 405.] And had Agent Lucas's testimony been discredited, the defendants contend, the Court would have granted Taylor's and Lewis's suppression motion, and no reasonable jury could have convicted Henderson, Taylor, or Lewis.  [Doc. 405.]  Consequently, they seek new trials under Rule 33(a). [Doc. 222.]

The government made disturbing efforts to defend Agent Lucas's credibility against growing evidence to the contrary.  In particular, in *United States v. Gaviria-Pena*, Judge Economus circulated an opinion granting a defendant's suppression motion that included the following statement: "These

Case No. 1:07-CR-68
Gwin, J.

facts, coupled with SA Lucas' demeanor during the evidentiary hearing, raise significant questions

regarding whether Pena made this statement, or whether SA Lucas recognized the patent deficiencies

in the arrest and then remembered the statement." After reviewing Judge Economus's opinion, the

government and the defendant agreed that the government would not appeal Judge Economus's

suppression order and the government would drop heroin distribution and use of communication

facilities charges and the defendant would plead guilty to an illegal reentry of a deported alien

charge.  After receiving Judge Economus's criticism of Lucas's credibility, the government also

approached Judge Economus in an *ex parte* proceeding.  Defense counsel knew the government

would approach Judge Economus and defense counsel stated no objection provided the government

would not seek to reverse Judge Economus's order suppressing evidence.  At this *ex parte* meeting,

the government persuaded Judge Economus to delete his opinion language questioning Agent

Lucas's credibility—a statement that would certainly have been *Giglio* material in future cases

involving Agent Lucas.  Although the government contends that Judge Economus first opinion

misunderstood the factual background, the lengths to which the government went to protect Agent

Lucas from cross-examination—especially in light of the problems with Agent Lucas's work

revealed in the U.S. Attorney's Office's 2002 investigation—are troubling.

Nevertheless, notwithstanding this troubling evidence, the defendants' new trial motions fail

because they cannot show prejudice.  The government violates *Giglio* only where the withheld

evidence is "material"—that is, where "there is a reasonable probability that, had the evidence been

disclosed to the defense, the result of the proceeding would have been different." *Carter v. Bell*, 218

F.3d 581, 601 (6th Cir. 2000) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).  To be

sure, this standard requires only that "the government's evidentiary suppression 'undermines

Case No. 1:07-CR-68
Gwin, J.

confidence in the outcome of the trial.'" *Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (quoting *Bagley*,

473 U.S. at 678).  Nevertheless, here, because independent sources corroborated all of Agent Lucas's

testimony, the evidence that was withheld was not material, and as a result, the defendants cannot

show prejudice.

First, with respect to Taylor and Lewis's suppression motion, even if *Giglio* applies to

suppression hearings, *cf. United States v. Bullock*, 130 F. App'x 706, 723 (6th Cir. 2005) ("'[I]t is

hardly clear that the *Brady* line of cases applies to suppression hearings.'") (citation omitted), Taylor

and Lewis cannot show prejudice.  Even without Agent Lucas's testimony, the officers had

reasonable suspicion to stop Lewis's and Taylor's van and probable cause to arrest them based on

Task Force Officer Verhiley's independent observations of their marijuana use and traffic violations

and confidential informants' tips about their involvement in an impending drug deal.  [Doc. 112.]

And the officers' subsequent search of their Extended Stay room was valid—even without Agent

Lucas's testimony—because Agent Moses's affidavit in support of the warrant application detailed

other officers' independent recitation of facts tying Taylor and Lewis to Henderson (a suspected drug

dealer), illegal drugs, and the Extended Stay room.  [Doc. 112.]

Second, Taylor and Lewis likewise cannot show prejudice in their trial.  Besides Agent

Lucas's testimony, the government introduced evidence that Taylor and Lewis traveled from

California to Cleveland to participate in a drug deal.  Further, the government introduced their key

to Room 106 at the Extended Stay—found during the lawful stop and search of the van Taylor and

Lewis were using—which Lewis and Taylor (after being *Mirandized*) admitted to sharing.  Finally,

the government introduced the PCP found during a lawful search of that room.  Sources independent

of Agent Lucas corroborated all of this evidence, and thus the government's failure to disclose the

Case No. 1:07-CR-68
Gwin, J.

Lucas impeachment evidence does not "undermine[] confidence in the outcome of the trial." *Bagley,
473 U.S. at 678*.

Third, with respect to Henderson's trial, the government presented sufficient evidence
independent of Agent Lucas to support the Henderson's conviction.  Confidential informants
identified Henderson as a PCP dealer from California.  Undercover police surveillance revealed that
Henderson frequented the Extended Stay hotel, and upon Officer Hill's request, Extended Stay
employees alerted the police when Henderson came to the Extended Stay in January 2007.  Police
officers staked out Henderson's room and tailed him when his wife used a van to pick him up.  The
officers stopped the van and arrested him on the basis of a valid outstanding Cuyahoga County
warrant.  The officers' search of the van yielded $17,000 in cash.  Henderson, after being
*Mirandized*, admitted that he had met with Taylor and Lewis at the Extended Stay and that the three
belonged to the Nutty Bloc Crips.  Finally, the government introduced the PCP found in Taylor and
Lewis's Extended Stay room.  Sources independent from Agent Lucas—namely, Officer Hill, Agent
Moses, Task Force Officer Verhiley, Detective Ansari, and Detective Clark—corroborated each of
these pieces of evidence.  Thus, assuming that evidence to be true and viewing it in the light most
favorable to the government, *see United States v. Abdullah*, 162 F.3d 897, 902-03 (6th Cir. 1998),
even without Agent Lucas's testimony, there is not "a reasonable probability that . . . the result of"
Henderson's trial "would have been different." *Carter*, 218 F.3d at 601.

This conclusion does not suggest that the Court approves the government's handling of *Brady*
evidence in this case.  Indeed, the Court is surprised by the government's efforts to shield Agent
Lucas's credibility despite its apparent knowledge of problems with his work.  But because *Giglio*
requires a defendant to show prejudice, and because the defendants here have failed to show

-7-

Case No. 1:07-CR-68
Gwin, J.

prejudice from the government failure to disclose evidence tending to impeach Agent Lucas, the

Court **DENIES** their Rule 33(b)(1) motion for a new trial.  [Doc. 222; Doc. 223.]

     IT IS SO ORDERED.


Dated: August 4, 2010                             s/      James S. Gwin
                                           JAMES S. GWIN
                                         UNITED STATES DISTRICT JUDGE